**Audrey TULLOCK, Appellant,**

v.

**STATE HIGHWAY COMMISSION OF MISSOURI et al., Appellees.**

**No. 74–1513.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 12, 1974.

Decided Dec. 23, 1974.

Walter Heiser, Legal Aid Society of the City and County of St. Louis, St. Louis, Mo., for appellant.

Gregory F. Hoffmann, Florissant, Mo., and Joseph B. Moore, Asst. U. S. Atty., St. Louis, Mo., for appellees.

Before GIBSON, Chief Judge, CLARK, Associate Justice, Retired,* and WEBSTER, Circuit Judge.

CLARK, Justice.

Mrs. Audrey Tullock brought this suit, in forma pauperis, in the United States District Court for the Eastern District of Missouri, seeking injunctive relief from the efforts of appellee-State Highway Commission to evict her and her eight

Supreme Court, Retired, sitting by designation.

minor children from their rented home on the outskirts of St. Louis, Missouri, without providing her any relocation assistance. On appeal, the central question is whether 49 C.F.R. § 25.11(e), a Department of Transportation regulation restricting the availability of relocation benefits and services guaranteed to those displaced by federally-assisted highway projects, conflicts with the governing provisions of the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. § 4601 et seq. We conclude that it does.[1]

## I.

The essential facts are these. In November of 1970, appellant, an AFDC recipient, began renting a house at 5808 Dowling Street in Berkeley, Missouri, from its then owners, Mr. and Mrs. Benjamin A. Kelley, for $100 per month. On June 6, 1973, the state acquired ownership of this property, which is located on the right-of-way of a federally-assisted project to extend Highway 725 northward. Subsequently, on November 9, 1973, the State Highway Commission brought suit in St. Louis County magistrate's court to dispossess her. In an order dated January 30, 1974, the magistrate gave appellant until June 10, 1974, to vacate the premises.[2]

On June 11, 1974, Mrs. Tullock filed an administrative claim with appellee-Kriz, the District Engineer for the State Highway Commission, seeking relocation benefits, payments, and advisory services under the Uniform Relocation Assistance Act and requesting that she not be forced to vacate her rented home unless and until she was given such benefits. Simultaneously, the state moved forward to execute upon the magistrate's court judgment by having appellee-Hoeh, the St. Louis County Sheriff, forcibly evict her. The filing of this suit and the issuance of a temporary restraining order prevented such action.

In a memorandum order dated July 2, 1974, the Federal District Court denied appellant's motion for preliminary injunction on the ground that she had failed to exhaust her administrative remedies. In addition, the Court concluded that 49 C.F.R. § 25.11, the administrative regulation defining those to whom relocation benefits were available, was a correct interpretation of the statute and that appellant was properly excluded from eligibility thereunder. We cannot

---

1. The impact of federally-assisted urban renewal and highway construction projects cannot be overestimated. More than two million dwelling units were demolished by such projects in the years between 1950–68 according to one study by the National Association of Home Builders, and some 62,000 families and individuals were displaced by federal highway programs in 1970 alone. Until recently, those displaced were simply left homeless and without assistance of any kind. See Roberts, "Homes, Roadbuilders and the Courts: Highway Relocation and Judicial Review of Administrative Action," 46 S.Cal.L. Rev. 51 (1972); Hartman, "Relocation: Illusory Promises and No Relief," 57 Va.L.Rev. 745 (1971); Note, "Relocation: An Investigation into Relocation under the Federal-Aid Highway Program," 7 Col.J. of L. and Soc.Prob. 466 (1971).

2. There are some inconsequential differences between the parties as to the facts. Appellees contend that at the time Mrs. Tullock

rented the premises in issue she was advised by the owners that the State Highway Commission was negotiating with them for the acquisition of their property and that she would have to vacate when the sale was consummated. Further, appellees assert that after the eviction proceedings were filed: (1) Mrs. Tullock filed and later abandoned a counterclaim seeking relocation assistance and benefits; (2) agreed to deliver possession on June 10, 1974; and (3) agreed to pay $100 per month rental until such date. Mrs. Tullock counters that there are no such facts in the record. Since our disposition does not rest in any way on the resolution of these conflicting factual claims, we are not obliged to remand for a factual finding with regard to them. For our purposes it is sufficient that the trial court found that Mrs. Tullock was in possession of the property in issue on January 2, 1971—the effective date of the Uniform Relocation Assistance Act—and that the appellees sought to displace her therefrom subsequent to that date.

agree and therefore reverse and remand the action for further proceedings in keeping with this opinion.

## II.

■ Appellees raise a number of attacks on the jurisdiction of the Federal Court and the justiciability of this action, all of which we reject. The State Highway Commission urges that it is immune from suit under the eleventh amendment, but this doctrine does not apply to suits seeking injunctive relief against state officials. Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). Moreover, by accepting the responsibility of administering relocation benefits under the federal statutes, the state has subjected itself to the same obligations as the federal government and thus has consented to be sued. See Parden v. Railway of the Alabama State Docks' Dept., 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964). In addition, there is a state statutory waiver of immunity for nontort suits in Mo.Rev.Stat. § 226.-100, V.A.M.S. Bush v. State Highway Commission, 329 Mo. 843, 46 S.W.2d 854 (1932).

■ It is further urged by appellees that the District Court was correct in holding that Mrs. Tullock has not exhausted her administrative remedies under 42 U.S.C. § 4633(b)(3). The short answer to this is that the State Highway Commission has already concluded that she is not eligible to receive any relief under the statute; to require further administrative proceedings would be of no avail. Before Mr. Justice Blackmun, in its answer to Mrs. Tullock's application for a stay, the State Highway Commission specifically stated that: "The Commission truly believes that its denial of appellant's claim for relocation assistance was proper * * *." And when the Commission refers to "its denial," we take it at its word.

■ Finally, appellee-Department of Transportation argues that the Uniform Relocation Assistance Act precludes judicial review of appellant's claims. We disagree. The decision in Will-Tex Plastics Manufacturing, Inc. v. H.U.D., 346 F.Supp. 654 (E.D.Pa.1972), on which appellee relies, held only that judicial review of claims under the real property acquisition policies provisions of Title III of the Act was barred. In contrast, Barnhart v. Brinegar, 362 F.Supp. 464 (W.D.Mo.1973), has considered the question here at issue and concluded, correctly we think, that judicial review of claims relating to relocation assistance is permitted.

## III.

We turn now to the merits. As we read the Uniform Relocation Assistance Act, its command is crystal clear. Whenever the acquisition of real property for a federally-assisted project will result in the displacement of any person after January 2, 1971, section 4622 requires the payment of a moving expense and dislocation allowance not to exceed $500, and section 4625 requires the establishment of relocation assistance advisory services "to minimize hardships to such persons in adjusting to relocation." Most importantly, section 4625(c)(3) requires that an adequate supply of replacement housing be available prior to displacement, specifying that each relocation assistance advisory program:

assure that, within a reasonable period of time, prior to displacement there will be available in areas not generally less desirable in regard to public utilities and public and commercial facilities and at rents or prices within the financial means of the families and individuals displaced, decent, safe, and sanitary dwellings, as defined by such Federal agency head, equal in number to the number of and available to such displaced persons who require such dwellings and rea-

sonably accessible to their places of employment * * *.[3]

In order to receive federal funds for any project which may result in the displacement of any person, states are required by section 4630 to give assurances that they will provide the relocation benefits and services authorized under §§ 4622 and 4625, as well as make certain that "decent, safe, and sanitary replacement dwellings" will be available in accordance with § 4625(c)(3).

■ Despite the undisputed fact that the State Highway Commission gave such assurances to the Federal Highway Administration, appellees are now attempting to renege on their commitment by refusing to furnish relocation benefits and services to Mrs. Tullock under the Act. It gives as its reason that appellant and her children are not "displaced persons" as defined by Department of Transportation regulations, specifically, 49 C.F.R. § 25.11(c).[4] This regulation provides that:

> A person who enters into occupancy of real property after the initiation of negotiations for that property or the issuance of a notice of intent to acquire that property by a given date, as the case may be, does not qualify as a displaced person for the purposes of this part.

Comparing § 25.11(e) with the statutory definition contained in the Uniform Relocation Assistance Act, we conclude that this regulation goes beyond the specific language of the statute and must be struck down. 42 U.S.C. § 4601(6) clearly states that:

> The term "displaced person" means any person who, on or after January 2, 1971, moves from real property, or moves his personal property from real property, as a result of the acquisition of such real property, in whole or in part, or as the result of the written order of the acquiring agency to vacate real property, for a program or project undertaken by a Federal agency, or with Federal financial assistance * * *.

Congress' intent to include *any* displaced person, regardless of time of occupancy, within §§ 4622 and 4625 is highlighted by the provisions of § 4624 which permit the payment of *additional* sums of money for replacement housing if the displaced person has occupied the property involved "for not less than ninety days prior to the initiation of negotiations for acquisition of such dwelling." As we read the whole statute, Congress has, indeed, recognized a distinction between those resident at the initiation of negotiations and those who become resident subsequently; nevertheless, both are entitled to relocation benefits. The distinction is that the former simply get more. We must accept as true that Congress says what it means and means ex-

---

**3.** To put teeth into this requirement, Congress has mandated that the federal agency causing the displacement is to be the house-provider "of last resort" under section 4626, as follows:

> (a) If a Federal project cannot proceed to actual construction because comparable replacement sale or rental housing is not available, and the head of the Federal agency determines that such housing cannot otherwise be made available he may take such action as is necessary or appropriate to provide such housing by use of funds authorized for such project.

> (b) No person shall be required to move from his dwelling on or after January 2, 1971, on account of any Federal project, unless the Federal agency head is satisfied that replacement housing, in accordance with section 4625(c)(3) of this title, is available to such person.

**4.** Under 42 U.S.C. § 4633, the head of each federal agency involved in land acquisition programs or assistance which may cause displacements of residents must promulgate implementing regulations. The Department of Transportation has published its regulations at 49 C.F.R. §§ 25.1–25.263, which include the one here in dispute. As a subagency of the Department of Transportation, the Federal Highway Administration is subject to these regulations, though it has published similar regulations of its own which include a corresponding definition of "displaced person" to § 25.11(e). *See* 23 C.F.R. § 740.3(c).

actly what it says. It follows that regulation 49 C.F.R. § 25.11(e) is inconsistent with the Act and is therefore invalid.[5] As the Court stated in Manhattan General Equipment Co. v. Commissioner, 297 U.S. 129, 134, 56 S.Ct. 397, 400, 80 L.Ed. 528 (1931):

> The power of an administrative officer or board to administer a federal statute and to prescribe rules and regulations to that end is not the power to make law * * * but the power to adopt regulations to carry into effect the will of Congress as expressed by the statute. A regulation which does not do this, but operates to create a rule out of harmony with the statute, is a mere nullity.

## IV.

Following the denial of the preliminary injunction by the District Court, appellant sought and was denied a stay pending appeal by this court on the understanding that Mrs. Tullock would remain undisturbed in her present domicile until October 14, 1974. Upon the expiration of that voluntary postponement of action, an application for further stay was granted by Mr. Justice Blackmun, Circuit Justice for this circuit, during the pendency of the instant appeal. Since we conclude that Mrs. Tullock is eligible for relief under §§ 4622 and 4625 of the Uniform Relocation Assistance Act, the stay is therefore continued in effect while the District Court determines the details of her recovery under these sections. The judgment below is reversed and the cause remanded for the entry of a final decree in keeping herewith.

Reversed.

**5.** The federal appellees urge that their "interpretation" of the statute should be given great deference. We note in this regard that none of the other federal agencies issuing implementing regulations have employed such a miserly definition of "displaced person" under the Act, but rather have remained true to the Congressional language. *See, e. g.,* Department of Housing and Urban Development, 24 C.F.R. §§ 42.20(d), 42.55(a) and (b); Dept. of Health, Education, and Welfare, 45 C.F.R. § 15.4(e); Dept. of Agriculture, 7 C.F.R. § 21.207; Dept. of the Interior, 41 C.F.R. §§ 114–50.105, 201(f); Dept. of Labor, 29 C.F.R. § 12.3; Dept. of Justice, 28 C.F.R. §§ 52.13(k), 52.14; Economic Development Administration, 13 C.F.R. § 310.2(d); Dept. of the Navy, 32 C.F.R. § 742.205.