LAKE PARK HOME OWNERS' ASSOCIATION, Edith C. Finnell, Howard J. and Cindy Sue Hartsock, Ross Bros., John H. Hault, Jr., Donna J. Williams, Barbara Love Pew, Garwin L. and Elizabeth A. Stubbs, Donald L. and Ethel L. Wilson, Robert W. and Rose C. Hagans, Roger E. and Wanda L. Glazer, Louise Raita, John S. Everhart, John E. and Donna E. Smith, Marilyn L. Bible, John P. and Annette I. Salrin, Robert D. and Rose Davis Lewis, David G. Phaxton and Marri H. Patterson, Plaintiffs,

v.

UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT and City of Coshocton, Ohio, Defendants.

Civ. A. No. C-2-75-474.

United States District Court,
S. D. Ohio, E. D.

Oct. 15, 1976.

---

Walter W. Reckless, Columbus, Ohio, for plaintiffs.

Kenneth F. Berry, Coshocton, Ohio, Bruce G. Forrest, Economic Litigation Section, U.S. Dept. of Justice, Washington, D.C., for defendants.

## OPINION AND ORDER

DUNCAN, District Judge.

Plaintiffs herein are an unincorporated association of home owners, and various individual members of the association. Defendants are the United States Department of Housing and Urban Development (HUD), the City of Coshocton, Ohio, and the Board of Park Commissioners of the City of Coshocton. The individual plaintiffs allege that they are "displaced persons" within the meaning of § 101 of Tile I of the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, Pub.L. No. 91–646, 42 U.S.C. § 4601(6), and they seek an order from this Court declaring them to be entitled to relocation assistance under the Act, including moving and related expenses benefits under §§ 202 and 210 of the Act, 42 U.S.C. §§ 4622 and 4630. This matter is before the Court upon the stipulations, joint exhibits and briefs submitted by the parties.

Defendants have not questioned this Court's jurisdiction in this action, and it would appear that a federal district court does have jurisdiction over disputes arising under those sections of the Act which are involved in this case. See *Tullock v. State Highway Commission*, 507 F.2d 712, 715 (8th Cir. 1974); *Jones v. District of Columbia Redevelopment Land Agency*, 162 U.S. App.D.C. 366, 372, 499 F.2d 502, 508 (1974); *Whitman v. State Highway Commission*, 400 F.Supp. 1050, 1059 (W.D.Mo.1975); *Barnhart v. Brinegar*, 362 F.Supp. 464, 472 (W.D.Mo.1973).

At the time this action was initiated, the individual plaintiffs owned certain cottages abutting a small body of water, called the Middle Basin, which was at one time a portion of Ohio's canal system. These cot-

tages, some of which were permanent residences, stood on land which has been owned in fee by the City of Coshocton since 1959, when the State of Ohio conveyed the land to the city "for public park, recreation, street, drainage, sewage, and sewer disposal and other public municipal purposes." The defendant City of Coshocton has from time to time since 1967 received substantial sums of money, in the form of federal grants administered by the defendant HUD, which it has used to purchase and develop for park and recreational purposes land adjacent to and surrounding the land on which plaintiffs' cottages were located. Then, prior to the filing of this action, the defendant city refused to renew the plaintiffs' leases. The plaintiff association and others commenced an action in the Court of Common Pleas of Franklin County, Ohio, in which they unsuccessfully challenged the non-renewal of the leases. Thereafter, in 1976, the plaintiffs' cottages were razed by the defendant Board of Park Commissioners.

42 U.S.C. § 4622(a) provides, in part, as follows:

Whenever the acquisition of real property for a program or project undertaken by a Federal agency in any State will result in the displacement of any person on or after January 2, 1971, the head of such agency shall make a payment to any displaced person, upon proper application as approved by such agency head, for [certain moving and related expenses].

42 U.S.C. § 4624 provides for payment by the head of the federal agency of certain relocation expenses incurred by displaced persons who were tenants at the time of displacement. 42 U.S.C. § 4630 provides, in part, as follows:

Notwithstanding any other law, the head of a Federal agency shall not approve any grant to, or contract or agreement with, a State agency, under which Federal financial assistance will be available to pay all or part of the cost of any program or project which will result in the displacement of any person on or after January 2, 1971, unless he receives satisfactory assurances from such State agency that—

(1) fair and reasonable relocation payments and assistance shall be provided to or for displaced persons, as are required to be provided by a Federal agency under sections 4622 . . . and 4624 of this title . . . . .

42 U.S.C. § 4601(6) provides, in pertinent part, as follows:

The term "displaced person" means any person who, on or after January 2, 1971, moves from real property, or moves his personal property from real property, as a result of the acquisition of such real property, in whole or in part, or as the result of the written order of the acquiring agency to vacate real property, for a program or project undertaken by a Federal agency, or with Federal financial assistance;

The position of defendant HUD from the outset of this litigation has been that the complaint fails to state a claim against it upon which relief can be granted. Its theory has been that "in order to trigger the benefits of the URA a person must have his property . . . directly acquired [either] by the federal government (§ 4622) or by a state agency (§ 4630) receiving federal financial assistance for the specific acquisition." Memorandum in support of HUD's motion to dismiss, at 405. In my judgment, this position rests upon a misconstruction of the statutory definition of "displaced person," 42 U.S.C. § 4601(6), set out hereinabove. This section refers to the acquisition of real property for a program or project undertaken with federal financial assistance. The pertinent question arising from such language is not whether federal monies directly funded the acquisition of the real property involved, but whether the state *program* or *project* which resulted in the acquisition was federally assisted. Under HUD's construction of the section, the "displaced person" status of a tenant or homeowner would be dependent upon whether the federal funding agency agreed to participate directly in the acquisition of the real estate involved in a state program or project. The federal participation in a given state project might be quite

substantial, but if·federal dollars were funneled to program or project costs other than land acquisition, no one moving as a result of the program or project would, under HUD's construction of the section, be a displaced person. The statutory definition plainly runs contrary to such an analysis. The statute turns on whether there is federal funding of the program or project, not whether federal funds can be traced directly to the acquisition of a particular parcel of real estate.

■ 42 U.S.C. § 4630, set out hereinabove, requires that the head of any federal agency must receive certain assurances from a state agency before he approves any grant, contract or agreement with the state agency "under which Federal financial assistance will be available to pay all or a part of the cost of any program or project which will result in the displacement of any person   .   .   .." Here, again, the crucial statutory reference is to the state program or project involved. The scope and nature of the federal grant, contract or agreement is not determinative; if federal funds are to be made available to pay *all or a part of the cost* of the state program or project, the necessary assurances must be received. The Department of Health, Education and Welfare has recognized as much, see 45 C.F.R. § 15.10(c) (1975). See also 40 C.F.R. § 4.103(c)(3) (1975). If, then, the state project concerns the construction of a dam and reservoir, the head of a federal agency cannot approve federal funding of the dam, and ignore the fact that the project necessarily includes acquisition of realty in the affected valley.

■ The Court finds ample evidence in the record to support a finding that the project involved here concerned the development for recreational and park purposes of the entire Lower Basin and Middle Basin area. It is also clear that this project was undertaken with federal financial assistance. The problem confronting plaintiffs under 42 U.S.C. § 4601(6) is the requirement that in order to be classified as displaced persons, they must have moved "from real property   .   .   .   as a result

of *the acquisition* of such real property .   . for a project undertaken   .   .   .   with Federal financial assistance." The stipulations of the parties indicate that the land in question was owned in fee by the State of Ohio from 1922 to 1959, and by the City of Coshocton from 1959 to the present. The first mention in the stipulations of federal funding for the area concerns the year 1968, some nine (9) years after the land was acquired by the city. This hiatus between acquisition and federally-funded project is too substantial to permit a determination that the land upon which plaintiffs' cottages were located was acquired by the city for a project undertaken with federal financial assistance. The land was in fact acquired by the city for public purposes in 1959, long before federal funding entered the picture. Under such circumstances, the refusal to renew leases of land already owned by the city did not constitute an "acquisition of real property." *Cf.* the regulations of defendant HUD, at 24 C.F.R. § 42.55(e)(3), where it is stated that "a person (other than the former owner or tenant of any real property acquired by a State agency) who enters into rental occupancy of real property after its acquisition by a State agency and thereafter moves from such real property shall not be considered displaced by acquisition for purposes of the regulations in this Part." See also 40 C.F.R. § 4.103(d) (1975). The Court holds that plaintiffs are not displaced persons within the meaning of the Act.

The Court does not read the complaint to allege that any of the defendants have taken plaintiffs' property without fair compensation. Neither the Fifth nor the Fourteenth Amendment is mentioned. Although plaintiffs cite *United States v. Causby*, 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206 (1946) in their brief on the merits and their memorandum contra the motion to dismiss, they apparently rely upon *Causby* only as support for the construction they would have the Court give the Uniform Relocation Assistance Act. Nor is there any basis in this record for a finding that plaintiffs have been deprived of their cottages without just compensation.

The Clerk will enter judgment for defendants herein.

SO ORDERED.