# United States Court of Appeals

### For the Eighth Circuit

_____

No. 17-2401

_____

James Osher,

*Plaintiff - Appellant,*

v.

City of St. Louis, Missouri,

*Defendant,*

Land Clearance for Redevelopment Authority of St. Louis,

*Defendant - Appellee,*

St. Louis Development Corporation,

*Defendant,*

National Geospatial-Intelligence Agency,

*Defendant - Appellee,*

Twenty-Second Judicial Circuit State of Missouri; Otis Williams; Laura Costello,
in their official and personal capacities,

*Defendants.*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: June 28, 2018
Filed: September 6, 2018
_____

Before COLLOTON, ARNOLD, and SHEPHERD, Circuit Judges.
_____

COLLOTON, Circuit Judge.

James Osher sued the St. Louis Land Clearance for Redevelopment Authority and the National Geospatial-Intelligence Agency after the Redevelopment Authority condemned Osher's property under its power of eminent domain. Osher sought to enjoin the condemnation proceedings and to obtain relocation benefits under the Uniform Relocation Assistance and Real Property Acquisition Policies Act, 42 U.S.C. § 4622. The district court[1] abstained from deciding Osher's claim against the Redevelopment Authority and dismissed his claim against the Agency. We conclude that the Act does not create a private right of action against the Agency, and that Osher waived any challenge to the court's abstention decision, so we affirm.

I.

The district court dismissed this case at the pleading stage, so we take the allegations in Osher's complaint as true. In 2012, the National Geospatial-Intelligence Agency announced its intention to move its western headquarters in St. Louis to a new location. To help persuade this employer to remain in the locale, the City of St. Louis sought to secure an attractive site for the Agency's new headquarters. The City's proposed site in north St. Louis included Osher's property. The St. Louis Land Clearance for Redevelopment Authority began acquiring property

_____

[1]The Honorable Henry Edward Autrey, United States District Judge for the Eastern District of Missouri.

-2-

within the proposed site. After notifying Osher of its intent to procure his property in December 2015, the Redevelopment Authority brought a condemnation action in state court.

While the state court action was pending, Osher brought suit in the district court and moved for a temporary restraining order, preliminary injunction, and permanent injunction against the condemnation proceedings. He alleged, among other things, that the Redevelopment Authority and the Agency violated the Uniform Relocation Assistance and Real Property Acquisition Policies Act (the "Act"), 42 U.S.C. § 4622, by failing to pay him the relocation benefits provided by the Act. Osher sought relief under 42 U.S.C. § 1983.

At a hearing on the motion, the district court determined that the parties agreed on the following additional facts. In the state court proceedings, Osher did not challenge the Redevelopment Authority's right to condemn his property, and the Redevelopment Authority took title to the property after paying the property's fair market value of $810,000 plus interest. After Osher refused to vacate the property, the Redevelopment Authority petitioned for a writ of possession from the state court. By the time of the hearing in federal court, the state court had granted the writ of possession and ordered Osher to tender possession of the property to the Redevelopment Authority immediately.

The district court ultimately denied Osher's motion and dismissed all of his claims. Citing the pending state court condemnation proceedings, the court abstained from exercising jurisdiction over Osher's claim against the Redevelopment Authority under the doctrine of *Younger v. Harris*, 401 U.S. 37 (1971). The court dismissed Osher's claim against the Agency on the grounds that § 1983 does not provide a remedy against a federal agency, and that the Act does not create a private right of action. Alternatively, the court concluded that Osher's claim failed on the merits, because the Act did not apply to the underlying eminent domain proceedings.

II.

Osher noticed an appeal on June 16, 2017, "from the final judgment entered in this matter on May 2, 2017." The Agency agrees that we have appellate jurisdiction, but the Redevelopment Authority argues that the notice was untimely. As timeliness under a statutory deadline is jurisdictional in a civil appeal, *Bowles v. Russell*, 551 U.S. 205, 210-13 (2007), we consider the question as to the entire appeal.

Osher had "60 days after entry of the judgment or order appealed" in which to file a notice of appeal. Fed. R. App. P. 4(a)(1)(B); *accord* 28 U.S.C. § 2107(b). The district court's order dismissing the action was filed December 29, 2016, more than 60 days before he filed the notice of appeal on June 16, 2017. But because Osher filed a timely motion for relief from the judgment under Rules 59 and 60, the time to file his appeal did not begin to run until the district court disposed of that motion on May 2, 2017. Fed. R. App. P. 4(a)(4)(A)(iv). Osher filed his notice of appeal within 60 days of May 2, so it is timely.

There is a second reason to be confident that Osher's notice of appeal was timely. "The entry of a judgment triggers the running of the time for appeal," *Jeffries v. United States*, 721 F.3d 1008, 1012 (8th Cir. 2013), and "[e]very judgment . . . must be set out in a separate document." Fed. R. Civ. P. 58(a). If the separate document requirement is not satisfied, however, "then the order is deemed 'entered' 150 days after the dispositive order was entered on the civil docket." *Jeffries*, 721 F.3d at 1012; *see* Fed. R. Civ. P. 58(c)(2). The district court here entered its dismissal order on December 29, 2016, but never set out the judgment in a separate document. The judgment was therefore deemed entered on May 28, 2017. Osher filed his notice of appeal within 60 days of May 28, so his appeal is timely for that reason as well.

On the merits, Osher challenges the district court's dismissal of his claims against the Agency under the Uniform Relocation Assistance and Real Property

Acquisition Policies Act. He disputes the district court's conclusion that there is no private right of action under the statute.

The Act provides in relevant part:

> Whenever a program or project to be undertaken by a displacing agency will result in the displacement of any person, the head of the displacing agency shall provide for the payment to the displaced person of—
>
> (1) actual reasonable expenses in moving himself, his family, business, farm operation, or other personal property; [and] . . .
>
> (3) actual reasonable expenses in searching for a replacement business or farm . . . .

42 U.S.C. § 4622(a)(1), (3). Osher contends that this provision entitles him to receive relocation benefits and gives him a cause of action to obtain them.

"[T]he fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." *Cannon v. Univ. of Chi.*, 441 U.S. 677, 688 (1979). "Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). Section 1983 does not create a remedy against a federal agency, *see District of Columbia v. Carter*, 409 U.S. 418, 424-25 (1973), so Osher must demonstrate that Congress intended "to create not just a private right but also a private remedy." *Sandoval*, 532 U.S. at 286. The Act does not expressly create a private right of action; Osher rests on a theory that the Act does so impliedly.

Osher maintains that *Tullock v. State Highway Commission*, 507 F.2d 712 (8th Cir. 1974), recognized an implied right of action under the Act. *Tullock* concluded

that the Act permitted "judicial review of claims relating to relocation assistance." *Id.* at 715. After determining that the plaintiff was a "displaced person" eligible for relocation benefits, the court stayed eviction proceedings until the district court calculated the plaintiff's recovery under the Act. *Id.* at 717. According to Osher, *Tullock* thus stands for the proposition that the Act provides a private right of action to displaced persons.

Insofar as *Tullock* recognized a private cause of action under the Act, it has been superseded by intervening precedent. *Tullock* was decided in an era when it was deemed "the duty of the courts to be alert to provide such remedies as are necessary to make effective the congressional purpose" expressed by a statute. *See J.I. Case Co. v. Borak*, 377 U.S. 426, 433 (1964). The Supreme Court, however, "abandoned that understanding in *Cort v. Ash*, 422, U.S. 66, 78 (1975)," decided the year after *Tullock*. *Sandoval*, 532 U.S. at 287. It is now clear that the proper focus is on congressional intent, and "nothing 'short of an unambiguously conferred right'" will support an implied right of action. *Does v. Gillespie*, 867 F.3d 1034, 1040 (8th Cir. 2017) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002)). It is insufficient to show merely that a particular statute "intend[ed] to benefit the putative plaintiff." *Id.* at 1039 (alteration in original) (quoting *Wilder v. Va. Hosp. Ass'n*, 496 U.S. 498, 509 (1990)). *Tullock* never addressed whether the Act unambiguously confers a private right or displays an intent to provide a private remedy.

Examining the relevant indicia of congressional intent, we conclude that Congress did not create a private cause of action to enforce the Act. The Act does not contain "rights-creating" language that is "phrased in terms of the persons benefited." *Gonzaga*, 536 U.S. at 284 (quoting *Cannon*, 441 U.S. at 692 n.13). Rather, the statute "focus[es] on the person regulated rather than the individuals protected," and thus "create[s] 'no implication of an intent to confer rights on a particular class of persons.'" *Sandoval*, 532 U.S. at 289 (quoting *California v. Sierra Club*, 451 U.S. 287, 294 (1981)).

The operative provision, § 4622(a), commands that "*the head of the displacing agency* shall provide for the payment" of the listed relocation benefits. *Id.* (emphasis added). When certain conditions are present, the Act directs that "*the head of the displacing agency* shall make an additional payment" to qualified displaced persons. *Id.* § 4623(a)(1) (emphasis added); *see also id.* § 4624. And the Act requires that "*[t]he head of any displacing agency* shall ensure that relocation assistance advisory services . . . are made available to all persons displaced by such agency." *Id.* § 4625(b) (emphasis added). Because the Act is phrased as a directive to the regulated agency, the Act lacks "the sort of 'rights-creating' language critical to showing the requisite congressional intent to create new rights." *Gonzaga*, 536 U.S. at 287.

Congress also provided for an administrative mechanism to enforce compliance with the Act. The existence of administrative procedures "counsel[s] against . . . finding a congressional intent to create individually enforceable private rights." *Id.* at 290. The Act instructs the head of the Department of Transportation to "develop, publish, and issue . . . such regulations as may be necessary to carry out this chapter." 42 U.S.C. § 4633(a)(1); *see id.* § 4601(12). The Department must include regulations ensuring that "a displaced person who makes proper application . . . shall be paid promptly after a move or, in hardship cases, be paid in advance." *Id.* § 4633(b)(2). The regulations further must ensure that "any aggrieved person may have his application reviewed by" the appropriate federal or state official. *Id.* § 4633(b)(3). As required by the Act, the Department's implementing regulations provide an administrative process for displaced persons to apply for relocation benefits, *see* 49 C.F.R. § 24.207, and for federal agencies to enforce compliance by States receiving federal funds. *See id.* § 24.4. "The express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others." *Sandoval*, 532 U.S. at 290.

Osher points to a statement in *Norfolk Redevelopment & Housing Authority v. Chesapeake & Potomac Telephone Co. of Virginia*, 464 U.S. 30 (1983), that displaced persons are "entitled to relocation benefits" under the Act. *Id.* at 32. But the only issue in *Norfolk* was the meaning of "displaced person." *Id.* at 34 n.5. The Court did not address whether the Act created a private right or remedy, and it is neither binding nor persuasive authority on those questions.

Osher also contends that by stating expressly in § 4602(a) that the provisions of § 4651 "create no rights or liabilities and shall not affect the validity of any property acquisitions by purchase or condemnation," Congress implicitly declared that § 4622 *does* create a private right of action. An express disavowal of rights under one section, however, does not amount to an unambiguous manifestation of intent to create enforceable rights under another. We consider the statute as a whole, and the text and structure of the Act fall short of demonstrating a congressional intent to create a private cause of action under § 4622. The district court properly dismissed Osher's claim against the Agency.

Osher's notice of appeal also encompassed the district court's order abstaining from the exercise of jurisdiction over his claim against the Redevelopment Authority. Osher's notice of appeal stated that he was appealing "from the final judgment entered in this matter on May 2, 2017," and it brought up for review all of the previous rulings and orders that led to the judgment. *See Rosillo v. Holten*, 817 F.3d 595, 597 (8th Cir. 2016). In his opening brief, however, Osher did not advance a meaningful argument that the district court erred by abstaining under the *Younger* doctrine. The contention is therefore waived. *White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Osher suggested at oral argument that he waived any challenge to abstention only on his claim for injunctive relief, while he adequately disputed the district court's decision to abstain from ruling on his claim for damages. We reject this dichotomy. The brief includes no argument about the abstention ruling in either context, and the point is waived.

\* \* \*

The judgment of the district court is affirmed.  The appellees' motions to strike are denied.

_____