# United States Court of Appeals
## For the Eighth Circuit

_____

No. 22-2340
_____

Elijah Wells, by and through his mother Suzanne Glover

*Plaintiff - Appellant*

v.

Creighton Preparatory School, in its official capacity

*Defendant - Appellee*

James Bopp, in his individual capacity; Sterling Brown, in his individual capacity

*Defendant*s
_____

Appeal from United States District Court
for the District of Nebraska - Omaha
_____

Submitted: May 10, 2023
Filed: September 20, 2023
_____

Before SHEPHERD, STRAS, and KOBES, Circuit Judges.
_____

STRAS, Circuit Judge.

Creighton Preparatory School expelled Elijah Wells after he made lewd remarks about a teacher. We must decide whether he plausibly alleged that the school discriminated against him "on the basis of sex," 20 U.S.C. § 1681(a), and, if

not, whether he may sue anyway for its failure to follow Title IX's administrative requirements, *see* 34 C.F.R. § 106.8.  The answer to both questions is no, so we affirm the district court's[1] decision to dismiss.

I.

Wells attended Creighton, an all-boys Jesuit high school in Omaha.  At school one day, a casual conversation with a friend turned "vulgar" when Wells said "that he would not have sex with" a teacher.  Unfortunately for him, "staff overheard the conversation."  Worse yet, they thought he said he *would* have sex with the teacher— behavior that, in their view, was "sexual misconduct."

Creighton launched an investigation.  Wells thought it was more like an inquisition: the Dean of Students "stated from the beginning that he deemed [Wells] guilty" and "repeatedly demanded" that he admit "to having said that he would have sex with the teacher."  After Wells "succumbed to [the] pressure" by giving "a false confession," the school expelled him.

Several months later, Wells sued Creighton under Title IX of the Education Amendments of 1972 on the theory that the school had discriminated against him by failing to perform an "adequate and impartial investigation."  *See* 20 U.S.C. § 1681(a) (prohibiting federally funded "education program[s]" like Creighton from discriminating "on the basis of sex"); 34 C.F.R. § 106.8(c) (requiring funding recipients to "adopt and publish grievance procedures that provide for the prompt and equitable resolution of student and employee complaints").  Relying on Nebraska law, he also alleged breach of contract based on a violation of the school's student-parent handbook.

---

[1]The Honorable Robert F. Rossiter, Jr., Chief Judge, United States District Court for the District of Nebraska.

The district court granted Creighton's motion to dismiss. *See* Fed. R. Civ. P. 12(b)(6). It first dismissed the Title IX claim because Wells had failed to "allege [that] his sex played any part in the disciplinary process at all." Then, with the federal question gone, it declined to exercise supplemental jurisdiction over Wells's breach-of-contract claim. *See* 28 U.S.C. § 1367(c)(3).

## II.

We review the grant of a motion to dismiss de novo. *See Rowles v. Curators of the Univ. of Mo.*, 983 F.3d 345, 358 (8th Cir. 2020). Like the district court, we must determine whether Wells's complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Far E. Aluminium Works Co. v. Viracon, Inc.*, 27 F.4th 1361, 1364 (8th Cir. 2022) (alteration in original) (citation omitted).

## A.

To survive a motion to dismiss on his Title IX claim, Wells must have plausibly alleged that Creighton discriminated against him "on the basis of sex." 20 U.S.C. § 1681(a). In the end, neither of his two sex-discrimination theories works.

The first is an "erroneous[-]outcome" theory. *Rowles*, 983 F.3d at 359; *see Rossley v. Drake Univ.*, 979 F.3d 1184, 1191–92 (8th Cir. 2020). The logic behind it is simple: a "decision that is against the substantial weight of the evidence and inconsistent with ordinary practice on sanctions may give rise to an inference of bias." *Doe v. Univ. of Ark. - Fayetteville*, 974 F.3d 858, 865 (8th Cir. 2020). Although bias "on the basis of sex" is one possible inference to draw from a botched finding or a procedural misstep, it is not the only one. 20 U.S.C. § 1681(a); *see Univ. of Ark.*, 974 F.3d at 865; *see also Doe v. Stonehill Coll., Inc.*, 55 F.4th 302, 334 (1st Cir. 2022) (explaining that "ineptitude, inexperience, and sex-neutral pro-complainant bias" can also lead to poor decisions (quoting *Doe v. Samford Univ.*, 29 F.4th 675, 692 (11th Cir. 2022))); *Doe v. Columbia Univ.*, 831 F.3d 46, 57 (2d Cir.

2016) (observing that allegations of bias "do not necessarily relate to bias on account of sex"). The complaint must still link the erroneous outcome to sex discrimination by alleging "something more." *Doe v. Columbia Coll. Chi.*, 933 F.3d 849, 856 (7th Cir. 2019); *see Samford Univ.*, 29 F.4th at 688–89 (collecting cases).

The "something more" is missing here. *Columbia Coll. Chi.*, 933 F.3d at 856. Wells has identified some potential errors from the investigation. One is the finding that he "said he *would* have sex with his teacher" when, in fact, he said "that he *would not.*" (Emphasis added). The other is that the school assumed "from the beginning" that he was guilty and never gave him the chance "to present his witnesses, evidence, or even just his version of the events." Assuming for the moment that these allegations "give rise to an inference of bias,"[2] nothing "plausibly link[s]" the expulsion to the fact he is male. *Austin v. Univ. of Or.*, 925 F.3d 1133, 1138 (9th Cir. 2019) ("Just saying so is not enough.").

The cases Wells relies upon are not to the contrary. *See Doe v. Regents of the Univ. of Minn.*, 999 F.3d 571 (8th Cir. 2021); *Univ. of Ark.*, 974 F.3d 858. In each, a university made the "dubious decision" to punish male students accused of sexual misconduct while under "substantial pressure . . . to demonstrate that it was responsive to female complainants." *Regents of the Univ. of Minn.*, 999 F.3d at 579 (quoting *Univ. of Ark.*, 974 F.3d at 865). We concluded that the allegations, "taken

---

[2]Any inference of bias here is weak. Creighton relied on the recollections of multiple staff members who "overheard" Wells's conversation before concluding he had engaged in sexual misconduct. *See Samford Univ.*, 29 F.4th at 692 (explaining that schools are free "to make . . . credibility determinations" in disciplinary proceedings). Much of the evidence supported, rather than contradicted, its conclusion that he said he *would* have "sex with his teacher." *See Univ. of Ark.*, 974 F.3d at 864 (explaining that an erroneous outcome is one "against the *substantial* weight of the evidence" (emphasis added)). Besides, even by Wells's own account, he used "vulgar language" in describing his intentions, which gave the school ample reason to investigate the incident and discipline him. *Cf. Rowles*, 983 F.3d at 359 (looking to "undisputed facts about [the plaintiff's] conduct that led the University to conclude that he had violated the sexual harassment and stalking policies").

together," stated a plausible Title IX claim. *Id.* at 577 (quoting *Univ. of Ark.*, 974 F.3d at 865). The key, however, was that there was "something more" to connect the disciplinary decisions to the plaintiffs' sex: the "[e]xternal pressure" placed on school administrators to act more "vigorously in response to complaints by female students." *Univ. of Ark.*, 974 F.3d at 865.

Nothing comparable exists here. Wells does not allege that Creighton faced external pressure to punish male students, much less gave in by expelling him.[3] *Cf. Regents of the Univ. of Minn.*, 999 F.3d at 579 (noting an administrator had let it slip that the school should suspend a group of students "because of optics"). Without an allegation of that kind, the complaint fails to plausibly allege the sort of "causal connection between the flawed outcome and gender bias" required to make an erroneous-outcome theory work. *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994).

Wells's other argument, which is based on a selective-enforcement theory, suffers from a similar flaw. *Rowles*, 983 F.3d at 360; *see Rossley*, 979 F.3d at 1191–92. Treating men and women differently can support an inference of sex discrimination, *see Yusuf*, 35 F.3d at 716, but it requires identifying a similarly situated member of the opposite sex who has been "treated more favorably." *Rowles*, 983 F.3d at 360. For Wells, he had to find "a female accused of sexual harassment" who received better treatment. *Id.*; *see also Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 237 (4th Cir. 2021).

There are no female students at Creighton, an all-boys school, let alone any who have faced sexual-misconduct allegations. *See Rowles*, 983 F.3d at 360; *Yusuf*, 35 F.3d at 716 (rejecting a selective-enforcement argument when the plaintiff's proposed comparator was, "like [him], . . . a male"). The staff members who

---

[3]We disregard the conclusory assertion in Wells's brief that Creighton "was under pressure on multiple fronts to find males responsible for sexual harassment" because we review only the "allegations in the complaint and materials embraced by pleadings." *Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019).

"overheard" the conversation do not count because they are not students, no one has accused them of sexual misconduct, and there is no allegation that they are female. *See Sheppard*, 993 F.3d at 237. To the extent that Wells argues that believing them over him raises an inference of discrimination, there is nothing alleged that the school did so because of his sex. *See Rowles*, 983 F.3d at 360 (explaining that "allegations regarding the University's treatment of [the plaintiff's] *accuser* do not support his claim that a female in similar circumstances—i.e., a female accused of sexual harassment or stalking—was treated more favorably").

Wells failed to plausibly allege that Creighton expelled him "because he is a male." *Univ. of Ark.*, 974 F.3d at 864. Counsel recognized as much at oral argument when he candidly admitted that "[t]here is no discrimination against [Wells] based on sex." After closely reviewing the complaint, we agree. *See* 20 U.S.C. § 1681(a); *see also Regents of the Univ. of Minn.*, 999 F.3d at 577.

B.

As an alternative, Wells wants to sue based on Creighton's failure to "adopt and publish grievance procedures that provide for the prompt and equitable resolution of student and employee complaints." 34 C.F.R. § 106.8(c). The only problem is that there is no cause of action allowing *him* to enforce the regulation.

The already existing implied cause of action "in favor of private victims of discrimination" does not cover it. *Cannon v. Univ. of Chi.*, 441 U.S. 677, 709 (1979). Plaintiffs can sue for sexual harassment and retaliation, both forms of sex discrimination, but "the failure to promulgate a grievance procedure does not itself constitute 'discrimination' under Title IX." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 292 (1998) (quoting 20 U.S.C. § 1681(a)); *see Samford Univ.*, 29 F.4th at 688 (observing that a "deviation from a Title IX policy is not, in and of itself, a violation of Title IX"). One cannot be a "private victim[] of discrimination" without experiencing discrimination, so the existing right of action is of no use to Wells. *Cannon*, 441 U.S. at 709; *see Gebser*, 524 U.S. at 292 ("We have never held,

however, that the implied private right of action under Title IX allows recovery in damages for violation of those sorts of administrative requirements."); *cf. Alexander v. Sandoval*, 532 U.S. 275, 285 (2001) (holding that the implied private right of action to sue for race discrimination under Title VI of the Civil Rights Act of 1964 "does not include a private right to enforce" regulations that "forbid conduct [Title VI] permits").

Nor have the requirements for recognizing a new private right of action been satisfied. According to the Supreme Court, the authorization for a private lawsuit to enforce a regulation "must come, if at all, from the independent force of" the statute that "confers the authority to promulgate" it in the first place. *Sandoval*, 532 U.S. at 286 (emphasizing that "private rights of action to enforce federal law must be created by Congress"). Here, Congress delegated authority to federal agencies to "issu[e] rules, regulations, or orders of general applicability" geared toward "effectuat[ing] the provisions" of Title IX's prohibition on sex discrimination. 20 U.S.C. § 1682. Wells must show that this statutory grant of authority both created an individual right and gave private plaintiffs the ability to enforce it. *See Sandoval*, 532 U.S. at 286; *see also Osher v. City of St. Louis*, 903 F.3d 698, 702 (8th Cir. 2018) (asking whether a statute "unambiguously confers a private right" and "provide[s] a private remedy").

It does neither. First, nothing in § 1682 "grants [a] private right[] to any identifiable class." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284 (2002) (citation omitted). It directs "[f]ederal department[s] and agenc[ies]" to issue regulations, 20 U.S.C. § 1682, but says nothing about "the individuals protected" by Title IX, *Sandoval*, 532 U.S. at 289. So, in *Sandoval*'s words, the grant of authority does not "create new rights" but rather "limits agencies to 'effectuat[ing]' rights *already* created." *Id.* (quoting 42 U.S.C. § 2000d-1) (alteration in original) (emphasis added).

Second, § 1682 does not create a private remedy. By its terms, it is "phrased as a directive to federal agencies engaged in the distribution of public funds." *Id.*

(citation omitted). It tells them what they can do to "effect[]" compliance: terminate or refuse funding after a "hearing" and "an express finding [of noncompliance] on the record" or take other measures "authorized by law." 20 U.S.C. § 1682. The point is that, by having one "express provision of . . . enforc[ement]," § 1682 signals "that Congress intended to preclude others," including a private right of action. *Sandoval*, 532 U.S. at 290; *see Karahalios v. Nat'l Fed'n of Fed. Emps., Loc. 1263*, 489 U.S. 527, 533 (1989) (describing the "elemental canon" that, "where a statute expressly provides a remedy," a court should be "reluctant" to imply anything else (citation omitted)).

*Sandoval* itself held as much under a nearly identical provision in Title VI, a companion statute to Title IX. *See Cannon*, 441 U.S. at 694 (noting that "Title IX was patterned after Title VI"). There, the Supreme Court concluded that 42 U.S.C. § 2000d-1, which authorizes agencies to issue regulations to "effectuate" compliance with Title VI, does not create an implied right of action to enforce them. *See Sandoval*, 532 U.S. at 288–91. If § 2000d-1 does not create a private right of action, then neither can § 1682. *Compare* 20 U.S.C. § 1682, *with* 42 U.S.C. § 2000d-1. The upshot for Wells is that *he* cannot sue to enforce the grievance-procedure requirement in 34 C.F.R. § 106.8(c). *See Sandoval,* 532 U.S. at 293; *see also Osher*, 903 F.3d at 703.

## III.

One loose end remains.[4] The district court declined to exercise supplemental jurisdiction over Wells's breach-of-contract claim after it dismissed the sole claim

---

[4]Less a loose end than a separate argument, Creighton wants us to apply the ecclesiastical-abstention doctrine. *See Watson v. Jones*, 80 U.S. (13 Wall.) 679, 727 (1871). But as it recognizes, the doctrine only applies "where resolution of the disputes cannot be made without extensive inquiry . . . into religious law and polity." *Serbian E. Orthodox Diocese for U.S. & Can. v. Milivojevich*, 426 U.S. 696, 709 (1976). Just because Creighton is a Jesuit school and Wells spoke in a vulgar manner does not necessarily mean this case requires an inquiry into religious doctrine, much less an "extensive" one. *Id.*; *see Hutterville Hutterian Brethren, Inc. v. Sveen*, 776

"over which it ha[d] original jurisdiction." 28 U.S.C. § 1367(c)(3). In these circumstances, "judicial economy, convenience, fairness, and comity" normally weigh against the exercise of supplemental jurisdiction. *McManemy v. Tierney*, 970 F.3d 1034, 1041 (8th Cir. 2020) (citation omitted). "This case is no exception." *Id.*

IV.

We accordingly affirm the judgment of the district court.

_____

F.3d 547, 553 (8th Cir. 2015) (explaining that there is no abstention when we can resolve disputes involving religious entities "by applying neutral principles of law" (citation omitted)).