**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19-2452**

MALCOLM X. SHEPPARD,

Plaintiff - Appellant,

v.

THE VISITORS OF VIRGINIA STATE UNIVERSITY; HENRY DEBOSE, individually,

Defendants - Appellees,

and

LETIZIA GAMBRELL-BOONE, individually and in her official capacity; JULIA A. WALKER,

Defendants.

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond. Henry E. Hudson, District Judge. (3:18−cv−00723−HEH)

Argued: January 28, 2021                          Decided: April 2, 2021

Before AGEE, THACKER, and QUATTLEBAUM, Circuit Judges.

Affirmed by published opinion. Judge Quattlebaum wrote the opinion, in which Judge Agee and Judge Thacker joined.

**ARGUED:** Scott G. Crowley, CROWLEY & CROWLEY, Glen Allen, Virginia, for Appellant. Michelle Shane Kallen, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellees. **ON BRIEF:** Mark R. Herring, Attorney General, Samuel T. Towell, Deputy Attorney General, Ronald N. Regnery, Senior Assistant Attorney General, Sandra S. Gregor, Assistant Attorney General, Toby J. Heytens, Solicitor General, Martine E. Cicconi, Deputy Solicitor General, Jessica Merry Samuels, Assistant Attorney General, Zachary R. Glubiak, John Marshall Fellow, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia; Ramona L. Taylor, University Legal Counsel, VIRGINIA STATE UNIVERSITY, Petersburg, Virginia, for Appellees.

———————————

QUATTLEBAUM, Circuit Judge:

Malcolm X. Sheppard appeals the district court's dismissal of both his Title IX claim against the Visitors of Virginia State University and his Fourteenth Amendment claims against Henry Debose, a university administrator. For the reasons that follow, we affirm.

I.

Sheppard's claims arise from an altercation with a former girlfriend in a Virginia State University ("VSU") dormitory.[1] From 2014 to 2016, Sheppard was enrolled as a student at VSU. On October 25, 2016, he discovered personal items were missing from his dorm room. Sheppard then learned from his roommate that Sheppard's former girlfriend, Student A, who was also a student, and her female friend, Student B, had been in his room. Sheppard first sought help from two dorm resident assistants to retrieve his personal items. After they were unwilling or unable to help, Sheppard decided to retrieve the items himself. According to Sheppard's Amended Complaint:

> Sheppard confronted Student A; he went to grab the dorm room keys from her and inadvertently pushed Student A while in the hallway outside of her dorm room. Student A filed an Incident Report with VSU's Department of Police and Public Safety . . . stating that Sheppard "pushed her several times while in front of [her dorm] . . . room and again in a nearby stairwell."

J.A. 31.

---

[1] Because we are reviewing a dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the facts presented here are as alleged by Sheppard.

Student B submitted a written statement to VSU's Department of Police and Public Safety acknowledging her involvement in taking items from Sheppard's dorm room and corroborating Student A's account of Sheppard's "pushing and grabbing." J.A. 31. The Department referred all three students to VSU's Office of Judicial Affairs ("OJA"). Sheppard was referred for assault, and Students A and B were referred for larceny. The day after the incident, OJA issued Sheppard a "Pre-Hearing Notice" of the charges against him and required he remain off campus pending their resolution. At that time, Sheppard, with permission to continue his courses online for the time being, went home.

OJA held a hearing on October 31, 2016, six days after the incident, which Sheppard attended. At that hearing, OJA found Sheppard to have violated Sections 8.01 (physical abuse, threats, intimidation or harassment) and 8.02 (violence on university property) of the VSU Student Code of Conduct. OJA imposed sanctions, including "100 hours of community service, anger management sessions, relationship violence education, and probation," but did not suspend Sheppard or preclude him from completing his coursework. J.A. 32. Sheppard appealed to Debose, the Director of OJA, seeking modifications to certain sanction requirements. Sheppard alleges he received no response and OJA never heard his appeal.

Meanwhile, sometime around the date of the incident, Student A had obtained a protective order in the Chesterfield County General District Court. The Order prohibited Sheppard from entering VSU's campus or being within 100 feet of Student A. Sheppard claims he never received notice of a hearing or a copy of the Order. On November 9, 2016,

4

with Sheppard still in the dark, the Chesterfield County General District Court extended the Order through January 2017.

Based on the Order, VSU emailed Sheppard's professors asking them to permit him to complete the remainder of the term online. One professor denied this request. On November 29, 2016, Debose wrote Sheppard, notifying him that his suspension from VSU would remain in effect and that he was deemed to be withdrawn from his courses. According to Sheppard, this was the first time he was told he was suspended.

As to the charges against Students A and B, on December 17, 2016, OJA contacted them regarding their alleged violations. Student B received "Pre-Hearing Notice" on January 11, 2017, with a hearing date set approximately one week later. Following initial postponement of the hearing at Student B's request, OJA found Student B not responsible for theft. OJA held Student A's hearing on April 7, 2017, finding her responsible for theft and imposing sanctions.

Sheppard filed a complaint with the Department of Education's Office of Civil Rights ("OCR") in January 2017, alleging that VSU treated him differently than Students A and B on the basis of sex due to the time delay in OJA proceedings against Students A and B in comparison to Sheppard.[2] According to Sheppard, OCR's preliminary investigation found that he had established a prima facie case of discrimination. Thereafter,

---

[2] VSU received noticed of Sheppard's OCR Complaint on March 16, 2017.

VSU entered into a Resolution Agreement with OCR to ensure future compliance with Title IX rather than proceed with a full investigation.

After Sheppard sued VSU, the district court dismissed his first complaint without prejudice under Federal Rule of Civil Procedure 12(b)(6).[3] Subsequently, Sheppard amended his complaint, re-alleging his Title IX claim against VSU and his due process claim under 42 U.S.C. § 1983 against Debose. Sheppard also added an equal protection claim under § 1983 against Debose. Again, the district court granted the defendants' Motion to Dismiss. In its memorandum opinion, the district court found, first, that Sheppard's Title IX claim, pled under the selective enforcement framework established in *Yusuf v. Vassar College*, 35 F.3d 709 (2d Cir. 1994), failed to demonstrate he was treated less favorably than a similarly situated student on the basis of his gender. Second, as to Sheppard's due process claim, the district court held that Debose was entitled to qualified immunity.[4] And lastly, Sheppard's equal protection claim, like his Title IX claim, failed to identify a similarly situated female student that was treated differently.

Sheppard timely appealed, and we have jurisdiction to hear his appeal under 28 U.S.C. § 1291.

---

[3] Sheppard's first Complaint brought a Title IX and Family Educational Rights Privacy Act ("FERPA") claim against VSU and Title IX, FERPA and due process claims against several VSU administrators.

[4] Moreover, the district court found Sheppard's due process claim failed on the merits.

## II.

We review dismissals under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim de novo, viewing the facts in the light most favorable to the plaintiff. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). "A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the claims pled in a complaint." *ACA Fin. Guar. Corp. v. City of Buena Vista, Va.*, 917 F.3d 206, 211 (4th Cir. 2019). To survive, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). While this standard does not require detailed factual allegations, it does require "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "While we must accept the factual allegations in the complaint as true, we need not accept a complaint's legal conclusions. Thus, simply reciting the cause of actions' elements and supporting them by conclusory statements does not meet the required standard." *ACA Fin. Guar. Corp.*, 917 F.3d at 212 (citation omitted). With this standard in mind, we turn to Sheppard's Amended Complaint.

## A.

We first consider Sheppard's Title IX and equal protection claims. Finding they fail for largely the same reasons, we affirm the district court's dismissal of both.

## 1.

Title IX prohibits federally-supported educational institutions from practicing discrimination on the basis of sex. 20 U.S.C. § 1681(a) ("No person in the United States

shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . .”). And it is enforceable through an implied private right of action, *Cannon v. Univ. of Chicago*, 441 U.S. 677, 703 (1979). Despite that, we have no precedential decisions regarding Title IX claims in the context we face here—higher-education disciplinary proceedings.[5] Thus, our first task is to determine what a party asserting such a Title IX claim must plausibly allege.

Looking to how our sister circuits have addressed this issue, courts are split. The first approach, articulated by the Second Circuit, in *Yusuf v. Vassar College*, 35 F.3d 709, 715 (2d Cir. 1994), provides that “[p]laintiffs attacking a university disciplinary proceeding on grounds of gender bias can be expected to fall generally within two categories,” erroneous outcome and selective enforcement. *Yusuf* then announced the requirements for establishing either claim.[6] *See id*. The First and Fifth Circuits have followed *Yusuf*’s

---

[5] To be clear, we have, in the past, expressed support for the *Yusuf* framework. *See Brzonkala v. Va. Polytechnic Inst. & State Univ.*, 132 F.3d 949, 957 (4th Cir. 1997), *rev’d en banc on other grounds*, 169 F.3d 820 (4th Cir. 1999); *see also Doe 2 by and through Doe 1 v. Fairfax Cnty. Sch. Bd.,* 832 Fed. App’x 802, 804–05 (4th Cir. 2020) (unpublished per curiam opinion analyzing plaintiff’s claim under *Yusuf* framework)*;Doe v. Loh*, 767 Fed. App’x 489, 491 (4th Cir. 2019) (unpublished per curiam opinion analyzing plaintiff’s claim under *Yusuf*’s erroneous outcome framework).

[6] An erroneous outcome claim alleges that “the plaintiff was innocent and wrongly found to have committed an offense.” *Yusuf*, 35 F.3d at 715. To plead erroneous outcome, plaintiffs “must allege particular facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding. If no such doubt exists based on the record before the disciplinary tribunal, the claim must fail.” *Id*. As to selective enforcement, “[s]uch a claim asserts that, regardless of the student’s guilt or innocence, the severity of the penalty and/or the decision to initiate the proceeding was affected by the

8

approach. *See Haidak v. Univ. of Mass.-Amherst*, 933 F.3d 56, 73–74 (1st Cir. 2019) (holding to succeed on a selective enforcement theory, plaintiff must show that "the severity of the penalty and/or the decision to initiate the proceeding was affected by the student's gender." (quoting *Yusuf*, 35 F.3d at 715)); *Klocke v. Univ. of Tex. at Arlington*, 938 F.3d 204, 210 (5th Cir. 2019) (recognizing *Yusuf*'s two-theory framework).

The Seventh Circuit, however, has rejected *Yusuf* as an all-inclusive doctrinal framework for student disciplinary proceedings. *Doe v. Purdue Univ.*, 928 F.3d 652, 667 (7th Cir. 2019) (holding *Yusuf*'s categories merely describe ways a party could allege discrimination on the basis of sex). Instead, *Purdue* articulated an approach that more closely tracks the text of Title IX, asking merely "do the alleged facts, if true, raise a plausible inference that the university discriminated against [the student] on the basis of sex?" *Id*. at 667–68 (internal quotation marks omitted). Many circuits have agreed with that approach. *See Doe v. Univ. of Sciences*, 961 F.3d 203, 209 (3d Cir. 2020) ("[T]o state a claim under Title IX, the alleged facts, if true, must support a plausible inference that a federally-funded college or university discriminated against a person on the basis of sex. Although parties are free to characterize their claims however they wish, this standard hews most closely to the text of Title IX."); *Doe v. Univ. of Ark.-Fayetteville*, 974 F.3d 858, 864 (8th Cir. 2020) ("To state a claim, therefore, [plaintiff] must allege adequately that the

---

student's gender." *Id*. While *Yusuf* is not as clear on what is required to plead selective enforcement, interpreting courts have found that such a claim requires a plaintiff plead a similarly situated student was treated more favorably. *See Haidak v. Univ. of Mass.-Amherst*, 933 F.3d 56, 74 (1st Cir. 2019).

University disciplined him on the basis of sex—that is, because he is male."); *Schwake v. Ariz. Bd. of Regents*, 967 F.3d 940, 947 (9th Cir. 2020) ("We adopt [the Seventh Circuit's] far simpler standard for Title IX claims. . . .").

We agree with the Seventh's Circuit's approach and see no need to deviate from the text of Title IX. In adopting this approach, however, we find no inherent problems with the erroneous outcome and selective enforcement theories identified in *Yusuf*. In fact, either theory, with sufficient facts, may suffice to state a plausible claim. We merely emphasize that the text of Title IX prohibits all discrimination on the basis of sex. *See* 20 U.S.C. § 1681(a).

We also clarify that inherent in this approach is a requirement that a Title IX plaintiff adequately plead causation—that is, a causal link between the student's sex and the university's challenged disciplinary proceeding. Not just any causal link will suffice because, again, the text of Title IX controls. Title IX prohibits discrimination by federally-supported educational institutions "on the basis of sex." 28 U.S.C. § 1681(a). That language—"on the basis of sex"—is significant. While admittedly not yet addressed in the context of a Title IX school disciplinary proceeding, the Supreme Court and our Circuit have held that the same or similar language requires "but-for" causation. *See Bostock v. Clayton Cnty., Ga*, 140 S. Ct. 1731, 1739 (2020) ("[T]he ordinary meaning of 'because of' is 'by reason of' or 'on account of.' In the language of the law, this means that Title VII's 'because of' test incorporates the 'simple' and 'traditional' standard of but-for causation." (internal quotation marks and citations omitted)); *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 351–52 (2013) (finding that the term "because" in Title VII's antiretaliation

10

provision required "proof that the desire to retaliate was the but-for cause of the challenged employment action"); *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009) (holding that the Age Discrimination in Employment Act's language "because of such individual's age," required plaintiff show "age was the 'but-for' cause of the employer's adverse decision"); *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 184 (2005) (finding that in a Title IX retaliation claim, a Title IX plaintiff "will have to prove that the [funding recipient] retaliated against him *because* he complained of sex discrimination"); *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 616 (4th Cir. 2020), *as amended* (Aug. 28, 2020) (relying on *Bostock* to find that in Title IX, "sex remains a but-for cause" in homosexual or transgender discrimination); *Gentry v. E. W. Partners Club Mgmt. Co. Inc.*, 816 F.3d 228, 235–36 (4th Cir. 2016) (holding that under Title I of the American with Disabilities Act's language, "discrimination . . . on the basis of disability," requires a plaintiff show "but-for" causation).[7] We agree that "on the basis of sex" requires "but-for" causation in Title IX claims alleging discriminatory school disciplinary proceedings.

Having determined what Sheppard must plausibly allege, our next task is to determine whether he has adequately done so. Sheppard alleges "VSU discriminated

---

[7] Thus far, none of our sister circuits have squarely addressed the causation requirement in a Title IX disciplinary proceeding. The Second and Seventh Circuits have suggested it might be sufficient for sex to be a motivating factor. *See Yusuf*, 35 F.3d at 715 (relying on Title VII to find that "we may safely say that Title IX bars the imposition of university discipline where gender is a motivating factor in the decision to discipline."); *Purdue*, 928 F.3d at 667 (describing *Yusuf*'s framework as "ways in which a plaintiff might show that sex was a motivating factor in a university's decision to discipline a student"). But in the absence of congressional intervention as in the Civil Rights Act of 1991, which expressly amended Title VII to include a motivating factor standard, we are constrained to the text of Title IX and our binding precedent interpreting the same or similar language.

against [him] by selectively enforcing the Student Code of Conduct against him, by taking swift and aggressive administrative action against him while taking essentially no action against female students charged in the same incident until compelled to do so by Sheppard's complaint to [OCR] . . . ." J.A. 37. According to Sheppard, the facts as pled give rise to a plausible inference of sex discrimination because, although his situation was similar in all respects to Student A's, OJA moved against him more quickly than Students A and B and OJA only proceeded against Students A and B in response to Sheppard's OCR Complaint.

We disagree. First, Sheppard pled no facts to support his conclusory allegation that he was similarly situated to Student A. Sheppard emphasizes what he describes as the generally-shared facts surrounding the altercation, including the same broad time frame, the same students involved and the same Code of Conduct invoked. But even taking Sheppard's allegations as true, Sheppard and Student A were not in similar positions. Student A was charged with larceny, an event temporally and elementally distinct from Sheppard's assault charge. Additionally, Sheppard, unlike Student A, was subject to a protective order issued by Chesterfield County General District Court.

Next, the time difference in OJA's proceedings against Sheppard compared to Student A that Sheppard alleges here does not give rise to an inference of discrimination on the basis of sex. There is nothing unusual, much less unreasonable, about proceeding against one party first. In fact, even in a joint disciplinary proceeding with two identically situated students, one party would still have to go first. Further, Sheppard alleged no facts

that plausibly show or infer that Sheppard's sex had anything to do with OJA's order or timing of proceedings.

At oral argument, Sheppard also likened the situation to two teams playing basketball and the referees only making calls against one team. But his factual allegations belie this analogy. Sheppard's Amended Complaint acknowledges that, by December 2016, all three students had received some notice of their pending OJA proceedings as a result of the altercation and that, by April 2017, OJA had fulfilled its obligation to all parties—finding Sheppard responsible for assault, Student A responsible for larceny and Student B not responsible for larceny. Even by Sheppard's own allegations, OJA called fouls—metaphorically—on both Sheppard and Student A.

Sheppard's final argument relates to his OCR complaint. He insists OJA only conducted hearings for Students A and B because he complained to OCR. Once again, however, his own allegations suggest the opposite is true. Prior to Sheppard's OCR Complaint, OJA not only gave Students A and B some form of notice but also scheduled Student B's proceedings. Although OJA later rescheduled Student B's proceedings, Sheppard points to no discriminatory reason for that postponement, merely stating "[t]hat hearing was subsequently postponed at her request." J.A. 34. The facts, as alleged, show VSU did proceed, in some fashion, as to Students A and B before Sheppard's OCR Complaint. The fact that Sheppard believes otherwise, absent more, does not suffice to render his claim plausible. *See Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level . . . .").

13

In sum, even construing Sheppard's Amended Complaint as true, as we must, Sheppard has failed to plead facts sufficient to give rise to a plausible inference of discrimination that was caused by his sex. That is, there is no plausible inference that Sheppard's gender was the "but-for" cause of his treatment under VSU's disciplinary proceedings. Accordingly, his claim was properly dismissed.

2.

Sheppard's equal protection claim under 42 U.S.C. § 1983 fails for largely the same reasons. "In order to survive a motion to dismiss an equal protection claim, a plaintiff must plead sufficient facts to demonstrate plausibly that he was treated differently from others who were similarly situated and that the unequal treatment was the result of discriminatory animus." *Equity in Athletics, Inc. v. Dep't of Educ.,* 639 F.3d 91, 108 (4th Cir. 2011).

Sheppard's equal protection claim, relying on the same facts as his Title IX claim, first fails to demonstrate plausibly that he and Student A were similarly situated. But even assuming Sheppard and Student A were similarly situated, his Amended Complaint fails to plead plausible discriminatory animus. Count III of his Amended Complaint alleging an equal protection violation contains only the conclusory statement, "Debose, was directly responsible for discriminating against Sheppard . . . on account of his male gender . . . ." J.A. 40. Absent any specific allegations that Debose was motivated by discriminatory animus, Sheppard's Amended Complaint fails to give rise to a plausible equal protection claim and was also properly dismissed.

14

B.

Last, we consider Sheppard's due process claim under 42 U.S.C. § 1983. This claim can be quickly disposed of on the basis of qualified immunity.

It is "a well-established principle of federal civil rights litigation . . . that government officials sued in their personal capacities for violations of federal rights are entitled to qualified immunity if the right was not clearly established at the time of the violation." *Doe v. Rector & Visitors of George Mason Univ.*, 132 F. Supp. 3d 712, 724 (E.D. Va. 2015) (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Saucier v. Katz*, 533 U.S. 194, 200–01 (2001)). To determine whether qualified immunity shields Debose, we must consider whether (1) the facts "make out a violation of a constitutional right" and (2) whether that right was "clearly established" at the time of the defendant's alleged misconduct. *Pearson,* 555 U.S. at 232. By looking to the merits of Sheppard's claim, we determine prong two ends our inquiry. *Id.* at 236 ("The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.").

To begin, Sheppard must identify a cognizable property or liberty interest and a deprivation without due process.[8] *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 569–71 (1972). "A protected property interest cannot be created by the Fourteenth

---

[8] Sheppard focuses only on a protectable "property" interest. J.A. 38–39, Opening Brief of Appellant at 15–22.

Amendment itself, but rather must be created or defined by an independent source." *Equity in Athletics,* 639 F.3d at 109. This property interest must be "more than a mere 'unilateral expectation of it' or 'abstract need or desire for it.'" *Id*. (quoting *Roth*, 408 U.S. at 577). Thus, Sheppard must show "a state created property interest in continued enrollment at a public education institution exists in Virginia." *Davis v. George Mason Univ.*, 395 F. Supp. 2d 331, 336 (E.D. Va. 2005), *aff'd per curiam*, 193 F. App'x 248 (4th Cir. 2006).

"The Supreme Court has [only] assumed, without actually deciding, that university students possess a 'constitutionally protectible property right' in their continued enrollment in a university." *Tigrett v. Rector & Visitors of Univ. of Va.*, 290 F.3d 620, 627 (4th Cir. 2002) (quoting *Regents of the Univ. of Mich. v. Ewing*, 474 U.S. 214, 223 (1985)). We have followed the same watchful approach. *Tigrett*, 290 F.3d at 627 ("Assuming the Appellants possessed some constitutionally protected interest in continued enrollment, they were not deprived of such an interest . . . .").

In the absence of binding precedent, Sheppard advances that under Virginia law, he had an implied contract with VSU under its Student Code of Conduct such that he cannot be subject to arbitrary or haphazard suspensions without notice or opportunity to be heard. But Sheppard fails to point to any Virginia state law to support his theory. And our review, though admittedly only revealing trial court cases, if anything, suggests state law does not support Sheppard's view. *See Bryarly v. Shenandoah Univ.,* 41 Va. Cir. 238 (Cir. Ct. of Va., City of Winchester Jan. 31, 1996) (stating that "assuming arguendo the Plaintiff's contention that the Policy Manual was a contract," there was still no breach of contract); *Faculty for Responsible Change v. Visitors of Madison Univ.*, 38 Va. Cir. 159 (Cir. Ct. of

16

Va., Rockingham Cnty. Oct. 5, 1995) (finding governance procedures of the James Madison University Faculty Handbook "expressed the parties' hopes and expectations with respect to faculty reorganizations and curriculum changes, but, as applied to the facts of this case, they are not an enforceable contract between the defendant and the faculty").[9]

Sheppard also argues he had a property interest in "VSU's policies and procedures." But we have held that mere "[v]iolations of . . . school procedures are insufficient by themselves to implicate the interests that trigger a federal due process claim." *Kowalski v. Berkeley Cnty. Schools*, 652 F.3d 565, 576 (4th Cir. 2011) (internal quotation marks, citation and alterations omitted).

Against this landscape, we conclude the right Sheppard asserts was not clearly established. The Supreme Court and this Court's assumptions, without express recognition, hardly amount to a clearly established right. Sheppard, in fact, admits as much. *See* Opening Brief of Appellant at 16 ("It has been an open question whether students enjoy a property interest in higher education that affords due process protection for academic or disciplinary misconduct sanctions."). Further, Sheppard's additional arguments regarding an implied contract or general property interest in policies and procedures underscore the

---

[9] And federal courts, interpreting Virginia law, provide no clear support for Sheppard's theory. Sheppard, in his brief, cites conflicting authority. *Compare Doe v. Marymount Univ.*, 297 F. Supp. 3d 573, 587–88 (E.D. Va. 2018) (finding "[u]nder Virginia law, a University's student conduct policies are not binding, enforceable contracts; rather, they are behavior guidelines that may be unilaterally revised . . . at any time"), *with Doe v. Alger*, 175 F. Supp. 3d 646, 658 (W.D. Va. 2016) (stating that while a student rights policy "may not itself create enforceable contract rights, it may nevertheless bear on whether [the student] had an entitlement to continued enrollment").

unestablished nature of any right. We agree with the district court that Debose is entitled to qualified immunity because there was no clearly established right to continued enrollment in higher education, and, having so concluded, we need not evaluate whether or not Sheppard received procedural due process.

## III.

In sum, Sheppard has failed to plead sufficient facts establishing a violation of Title IX or the Equal Protection clause. As to his due process claim, Debose is entitled to qualified immunity because there is no clearly established right to continued enrollment in higher education. Accordingly, we affirm the district court's dismissal.

*AFFIRMED*