# UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

**No. 20-2197**

JEREMIAH HENDERSON,

      Plaintiff - Appellant,

    v.

AUSTIN K. MCCLAIN, in his individual capacity,

      Defendant - Appellee.

Appeal from the United States District Court for the Western District of Virginia, at Roanoke. Thomas T. Cullen, District Judge. (7:19-cv-00685-TTC)

Argued: January 26, 2022             Decided: March 9, 2022

Before MOTZ, THACKER and QUATTLEBAUM, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Gary M. Bowman, Roanoke, Virginia, for Appellant. Timothy Ross Spencer, OFFICE OF THE CITY ATTORNEY FOR THE CITY OF ROANOKE, Roanoke, Virginia, for Appellee. **ON BRIEF:** Douglas P. Barber, Jr., OFFICE OF THE CITY ATTORNEY FOR THE CITY OF ROANOKE, Roanoke, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Jeremiah Henderson ("Appellant") appeals the district court's dismissal of his complaint brought pursuant to 42 U.S.C. § 1983, in which he alleged that Officer Austin McClain ("Appellee"), an officer with the Roanoke Police Department, violated his First and Fourth Amendment rights. Appellant asserted that Appellee violated his Fourth Amendment rights when he detained Appellant during an incident at a Walmart store and that he thereafter retaliated against Appellant in violation of the First Amendment by initiating criminal proceedings for assault and battery because Appellant filed a citizen's complaint about the incident with the Roanoke Police Department. The district court awarded summary judgment in Appellee's favor, holding that he was entitled to qualified immunity. For the reasons that follow, we affirm.

I.

In reviewing the district court's grant of summary judgment, we view the facts in the light most favorable to Appellant. *Estate of Jones v. City of Martinsburg*, 961 F.3d 661, 664 (4th Cir. 2020). The material facts underlying this dispute were captured on Appellee's body camera and are not genuinely contested.

On October 15, 2018, as Appellant -- a 70 year old man suffering from several health conditions, including chronic obstructive pulmonary disease -- exited the Walmart, a store associate, Jeannette Wheeler ("Wheeler"), asked to see his receipt. Appellant refused, and Wheeler radioed for assistance, contending he threatened her. Appellee, who was wearing a body camera and was at the store investigating an unrelated shoplifting incident, heard

2

the call and accompanied a store manager, Lindsay Peterson ("Peterson"), to the entrance to find Appellant and Wheeler.

It took Appellee and Peterson less than a minute to respond to Wheeler's request for assistance. In that time, an assistant manager, Christopher Shelton ("Shelton"), arrived and confronted Appellant. Upon arriving at the entrance, Appellee briefly spoke to Wheeler and then proceeded toward Shelton and Appellant, who were mid-conversation and positioned face to face a few feet behind Wheeler. Shelton told Appellee that he wanted Appellant removed from the store and began to walk away. Appellant, who wanted to continue the conversation, reacted quickly and reached out toward Shelton's arm. The bodycam footage clearly depicts Appellant contacting Shelton.[1]

Immediately thereafter, Appellee attempted to place Appellant in handcuffs. It took Appellee approximately 30 seconds to secure the handcuffs. During that time, Appellee twisted Appellant's right arm behind his back while ordering Appellant to stop resisting. Appellant, who was visibly confused at this point, asked Appellee why he was being detained and told Appellee that he was unable to breathe. After Appellee secured the handcuffs, he walked Appellant to the loss prevention office. Appellee informed Appellant that although he was being detained, he was not under arrest.

Shortly after entering the office, Appellee removed the handcuffs from behind Appellant's back and placed them in front so that Appellant could use his inhaler. Appellee

---

[1] Indeed, after reviewing the footage, Appellant admitted in his sworn declaration that he touched Shelton's left arm.

asked Peterson to determine whether Wheeler or Shelton wanted to press charges against Appellant. After speaking with both, Peterson confirmed that neither wished to press charges and only wanted Appellant barred from the property. Appellee immediately removed Appellant's handcuffs, completed a "trespass bar letter," and advised Appellant that if he returned to the Walmart, he would be arrested for trespass. J.A. 575.[2] Throughout his detention, which lasted approximately 25 minutes, Appellant repeatedly questioned Appellee's authority to detain him or bar him from the store and advised Appellee that he intended to file a complaint about the incident.

Two days later, on October 17, 2018, Appellant filed the promised complaint with a supervisor at the Roanoke Police Department. In the complaint, Appellant reported that he could not breathe as Appellee grabbed his arm so forcefully that Appellant had to seek medical treatment. Appellant also described Appellee as "aggressive, inappropriate, bias[ed], and prejudice[d]." J.A. 477. Sergeant David Lovell ("Sergeant Lovell"), the supervisor responsible for investigating the complaint, told Appellee that Appellant filed the complaint and instructed him to complete a full report and to ask the employees involved whether they wanted to press charges against Appellant. Sergeant Lovell testified that he could not recall whether Appellee advised him that at the time of the incident, the

---

[2] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

Pursuant to Virginia Code § 15.2-1717.1, an owner of real property may authorize local law enforcement to act as a "person lawfully in charge of the property" for the purpose of forbidding individuals from entering the property. Law enforcement officers exercise this authority by issuing a "trespass bar letter" to the individual.

employees were asked if they wanted to press charges, and they declined to do so. But in a sworn declaration, Appellee reported that Sergeant Lovell instructed him "to ask Mr. Shelton and Ms. Wheeler [himself] if they wanted to press criminal charges against Mr. Henderson *since* [he] did not personally ask[] them on October 15, 2018," which suggests that Appellee told Sergeant Lovell that the employees previously declined to press charges. *Id.* at 63 (emphasis supplied).

Appellee returned to the Walmart on October 19, 2018, to speak with Wheeler and Shelton. These interviews were also captured on Appellee's body camera. Wheeler again declined to press charges. Shelton also initially declined again, but he ultimately agreed to press charges after Appellee advised him about the complaint against the department. In this regard, as best we can discern from the bodycam footage, the following conversation between Shelton and Appellee transpired once Appellee asked Shelton if he wanted to press charges:

- **Mr. Shelton**: No, sir. Ya'll have enough.
- **Appellee**: Well, unfortunately the reason why I'm calling you is that he has made a complaint to the police department and I didn't write a full report, so . . .
- **Mr. Shelton**: Who is he complaining about?
- **Appellee**: The police department mostly, I don't know if he's complained about Walmart.
- **Mr. Shelton**: If he is giving ya'll crap, then I'll be glad to press charges.

J.A. 634.

Accordingly, that same day, Appellee sought a misdemeanor arrest warrant against Appellant for assault and battery. Appellee attested to a magistrate for the City of Roanoke that he "had observed Mr. Henderson in an agitated state grab Mr. Shelton's arm to stop him from walking away as shown on [his] body worn camera video," and the magistrate

5

issued the arrest warrant. J.A. 63. Thereafter, also on October 19, 2018, Sergeant Lovell concluded that Appellant's citizen's complaint was "unfounded," and that Appellee should "be exonerated." *Id.* at 579.

Several days later, no earlier than October 22, 2018,[3] Sergeant Lovell called Appellant and asked him to come to the police station to tell "[his] side of the story." J.A. 371. Sergeant Lovell did not inform Appellant that he had a warrant for his arrest or that he had already recommended Appellee "be exonerated." *Id.* at 579. At the end of the so-called interview, Sergeant Lovell served the arrest warrant.

The assault and battery charge remained pending against Appellant from October 19, 2018, until May 1, 2019, when the Roanoke City General District Court found Appellant not guilty after a bench trial. In September 2019, Appellant filed this 42 U.S.C. § 1983 lawsuit against Appellee in his individual capacity. Following discovery, Appellee moved for summary judgment based on qualified immunity.

The district court granted Appellee summary judgment. The court concluded that Appellee was entitled to qualified immunity on Appellant's false arrest, malicious prosecution, and excessive force claims because the October 15, 2018 detention and subsequent arrest were supported by probable cause and because Appellee used a reasonable amount of force to effect the detention. Although Appellant also asserted that he brought a retaliatory prosecution claim, the district court determined that he did not.

---

[3] Appellant's sworn declaration and the executed "date of service" in the arrest warrant corroborate this timeline. *See* J.A. 497.

6

Appellant timely appealed.

## II.

We review a district court's summary judgment decision based on qualified immunity de novo, "viewing the facts in the light most favorable to . . . the non-moving party." *Cox v. Quinn*, 828 F.3d 227, 235 (4th Cir. 2016). In conducting our review, we apply the same legal standards as the district court and view all facts and reasonable inferences in the light most favorable to the nonmoving party. *Ballengee v. CBS Broad., Inc.*, 968 F.3d 344, 349 (4th Cir. 2020). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "To create a genuine issue for trial, the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 540 (4th Cir. 2015) (internal quotation marks omitted).

## III.

### A.

The district court held that Appellee was entitled to qualified immunity on his malicious prosecution, false arrest, and excessive force claims. The court further determined that Appellant had not brought a retaliatory prosecution claim. For the

7

purposes of this appeal, we assume, without deciding, that the complaint stated a claim for retaliatory prosecution.[4]

"Qualified immunity shields police officers who commit constitutional violations from liability when, based on clearly established law, they could reasonably believe that their actions were lawful." *Estate of Jones v. City of Martinsburg*, 961 F.3d 661, 667 (4th Cir. 2020) (internal quotation marks omitted). Thus, "[t]o determine whether qualified immunity applies, we conduct a two-step inquiry: (1) whether a constitutional violation occurred; and (2) whether the right was clearly established at the time of the violation." *Id.* If *either* inquiry is answered in the negative, the defendant official is entitled to summary judgment. *See Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 238 (4th Cir. 2021). We are permitted to address the two prongs of qualified immunity in either order. *Id.*

## B.

Other than the excessive force claim, all of Appellant's claims require Appellant to demonstrate that Appellee lacked probable cause or lacked a reasonable belief that he had probable cause to arrest or detain Appellant for assault and battery. *See Nieves v. Bartlett*, 139 S. Ct. 1715, 1727 (2019) ("[P]robable cause should generally defeat a retaliatory arrest claim.");[5] *Hupp v. Cook*, 931 F.3d 307, 323–24 (4th Cir. 2019) ("[A] plaintiff must show

---

[4] *See Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 545 (4th Cir. 2013) (assuming without deciding that the operative complaint adequately pled an element of the relevant claim).

[5] In *Nieves*, the Supreme Court created a narrow exception to this general rule "when a plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." 139 S. Ct. at 1727. Appellant has presented no such evidence here.

that the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor" to prove a § 1983 malicious prosecution claim. (internal quotation marks omitted)); *Sowers v. City of Charlotte*, 659 F. App'x 738, 739 (4th Cir. 2016) ("To state a claim for false arrest or imprisonment under § 1983, a plaintiff must demonstrate that he was arrested without probable cause." (citing *Street v. Surdyka*, 492 F.2d 368, 372–73 (4th Cir. 1974))). Thus, if Appellee had probable cause to detain and arrest Appellant for assault and battery, Appellee is entitled to qualified immunity on these claims.

"Probable cause to justify an arrest means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed . . . an offense." *Humbert v. Mayor of Balt. City*, 866 F.3d 546, 555 (4th Cir. 2017) (internal alterations and quotation marks omitted). We evaluate probable cause under an objective standard, considering the totality of the circumstances known to the officers at the time of the alleged seizure. *Smith v. Munday*, 848 F.3d 248, 253 (4th Cir. 2017); *see Graham v. Gagnon*, 831 F.3d 176, 184 (4th Cir. 2016).

"Because the probable cause inquiry is informed by the 'contours of the offense' at issue, we are guided by . . . Virginia law in determining the scope of the offense . . . for which [Appellant] was arrested." *Hupp*, 931 F.3d at 318 (internal quotation marks omitted). Virginia defines battery as "contact done in a rude, insolent, or angry manner." *Simms v. Ruby Tuesday, Inc.*, 704 S.E.2d 359, 364 (Va. 2011) (internal quotation marks omitted); *Parish v. Commonwealth*, 693 S.E.2d 315, 319 (Va. Ct. App. 2010) (holding that

9

conduct and statements of the alleged offender may demonstrate whether contact was made in a "rude, insolent, or angry manner").

Here, the detention occurred immediately after Appellant was accused of making threats against one Walmart associate and touched another during a confrontational conversation. Given the somewhat chaotic and hostile scene, the undisputed facts -- specifically, that Appellant reached for and touched Shelton's arm to prevent Shelton from walking away -- could lead a reasonable officer to conclude that the contact was done in a rude, insolent, or angry manner. Thus, the totality of the circumstances was "sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed an offense." *Humbert*, 866 F.3d at 555 (internal quotation marks omitted).

Appellant contends that "[e]ven if [his] conduct . . . was sufficient to justify [Appellee] in seizing [him] to prevent him from taking some further action against Shelton, it was insufficient to support [Appellee's] initiation of a prosecution of [Appellant] for assault and battery under Virginia law on October 19--four days later." Opening Br. at 26. But probable cause did not disappear in the four days between the detention and arrest. Contrary to Appellant's suggestion otherwise, the mere fact that Shelton initially declined to press charges does not mean that Shelton felt no fear or apprehension of bodily harm. It simply means that he did not wish to press charges. Moreover, under Virginia law, such a feeling of fear or apprehension is only required for assault -- not for battery. *See Simms*, 704 S.E.2d at 364.

10

Appellant's remaining arguments are similarly unpersuasive. For example, Appellant contends that the district court erred by granting Appellee summary judgment on the malicious prosecution and false arrest claims based on the existence of probable cause because Appellee withheld material facts from the magistrate that issued the arrest warrant. The material fact allegedly omitted -- *Appellee's motive* for pursuing the charge -- is entirely irrelevant to whether, based on *Appellant's actions* at Walmart on October 15, 2018, there was probable cause for Appellee to believe that Appellant committed assault and battery as defined by Virginia law. Furthermore, even if Appellee omitted a material fact as Appellant contends, that omission would affect the weight the magistrate's finding of probable cause holds,[6] not whether a reasonable officer would have believed probable cause existed at the time of Appellant's arrest. Here, the district court -- which did not base its probable cause finding on the existence of the arrest warrant -- correctly determined that the undisputed facts established probable cause. *See Henderson v. McClain*, No. 7:19-CV-00685, 2020 WL 6136850, at \*4 (W.D. Va. Oct. 19, 2020) ("The facts and circumstances known to Officer McClain plainly warranted a belief that Henderson had committed or was committing a battery against Shelton under Virginia law . . . . Because McClain had

---

[6] Ordinarily, a magistrate's probable cause finding "weighs heavily *toward* a finding that the defendant is immune from suit." *Hupp*, 931 F.3d at 324 (emphasis in original) (internal quotation marks omitted). However, "where an officer provides misleading information to the prosecuting attorney or where probable cause is 'plainly lacking,' the procedural steps taken by an officer no longer afford a shield against a Fourth Amendment claim." *Id.*

probable cause to suspect a battery, he is entitled to qualified immunity on Henderson's false arrest and malicious prosecution claims.").

Appellant also argues that there is a dispute of fact as to whether he touched Shelton in a rude, insolent, or angry manner. This argument reaches well beyond the probable cause determination before us to the merits of the assault and battery claim. Probable cause does not require evidence sufficient to secure a conviction. *Hupp*, 931 F.3d at 318. Nor does it require officers to act as "legal technicians" by, for example, analyzing at length when contact is rude, insolent, or angry. *See Kaley v. United States*, 571 U.S. 320, 338 (2014).

In sum, the undisputed evidence here, viewed in the light most favorable to Appellant, demonstrates that probable cause existed for his detention and arrest. Because Appellant has not produced sufficient evidence that Appellee lacked probable cause, his claims for malicious prosecution, retaliatory prosecution, and false arrest likewise fail.

C.

We turn now to the excessive force claim, the only claim not resolved on our probable cause determination. As the district court acknowledged, this court has held that the use of handcuffs rarely constitutes excessive force where the officer has probable cause for the underlying arrest. *E.W. v. Dolgos*, 884 F.3d 172, 186 (4th Cir. 2018) (citing *Brown v. Gilmore*, 278 F.3d 362, 369 (4th Cir. 2002)). Of course, there are exceptions to this general rule, as a "lawful arrest does not categorically legitimize binding a person's wrists in chains." *Id.* at 180. But this case is no exception.

Although the bodycam footage here is not of perfect quality or unambiguous in all respects, the record evidence puts beyond genuine dispute that, at a minimum, Appellant was initially physically resistant and noncompliant with Appellee's instructions during the handcuffing. It matters not whether his resistance was unintentional, as Appellant contends, because "[i]n evaluating excessive force claims, the reasonableness of the officer's belief as to the appropriate level of force should be judged from that on-scene perspective." *Brown*, 278 F.3d at 369 (internal quotation marks omitted). Indeed, "[f]or courts to fine-tune the amount of force used in a situation such as this would undercut the necessary element of judgment inherent in a constable's attempts to control a volatile chain of events." *Id.*

As Appellant's expert witness observed, one presumes that Appellee could have de-escalated the altercation between Appellant -- an elderly and visibly frail man -- and Shelton -- a middle aged man with no visible frailties -- in a non-forceful manner. But judging from an on-scene perspective, Appellee's action in handcuffing Appellant nonetheless passes constitutional muster.

IV.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED*.